IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WAYNE RESPER, | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. PJM-13-303 |
| LIEUTENANT B.A. WILT, et al., | * | |
| Defendants. | | |
| | *** | |

**MEMORANDUM OPINION**

Pending is a Motion to Dismiss, or in the alternative Motion for Summary Judgment filed on behalf of Defendants Warden Bobby P. Shearin, Commissioner J. Michael Stouffer, Lt. Bradley Wilt, CO II Christopher McKenzie and CO II Roman Raley. ECF No. 16. Plaintiff has responded. ECF No. 24. Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, the dispositive motion filed by Defendants will be granted.

Background

Plaintiff states that on March 2, 2010, while housed at the North Branch Correctional Institution ("NBCI"), Wilt, in violation of Plaintiff's First Amendment rights, intercepted his communication to the Warden and issued a Notice of Inmate Rule Violation ("NOI") in response to the communication. ECF No. 1. On that same date, Plaintiff alleges Raley created a false NOI regarding Plaintiff's medication. *Id*. On March 4, 2010, Plaintiff alleges Hearing Officer Maddox violated his right to due process by finding him guilty of the charged rule infractions. *Id*.

On the same date, Plaintiff states he was placed in a cell with a stopped toilet which strongly smelled of urine and feces. Feces was on the toilet and floor and the window was locked. Plaintiff claims that the toilet was not unclogged until the following day and he was not provided cleaning

1

materials until the weekend. ECF No. 24. He states the cell was wet and smelled of urine and he was provided no materials to clean the cell. ECF No. 1.

On April 14, 2010, Plaintiff claims McKenzie maliciously and "retributively" searched his cell destroying Plaintiff's journals, books, manuscripts, college course materials, and pending litigation. *Id*.

Plaintiff states that on May 19, 2010, his footwear was confiscated after it was stained with blood, leaving him only shower shoes. ECF No. 24. Plaintiff filed a request for administrative remedy on August 13, 2010 concerning the lack of shoes and was provided replacement shoes later that month. *Id*.

Defendants' explanation of events differs. Wilt avers that he charged Plaintiff with using threatening language, a rule 104 violation, because one of Plaintiff's Administrative Remedy requests ("ARPs") stated: "I believe that unsupervised contact with Sg. T Sires poses a substantial risk to my safety and his." ECF No. 16, Ex. 2. Wilt avers that he believed this statement to contain a direct threat to Sires, in that if Plaintiff and Sires encountered each other, Sires' safety would be in jeopardy. Wilt completed an NOI with a written statement of facts. *Id*., Exs. 2 & 3. Plaintiff acknowledged receipt of the NOI and requested an inmate representative named "Kevin" and Wilt as a witness. The ARP in question was attached to the NOI as an exhibit. *Id*.

A hearing on the NOI was held on March 4, 2010. Kevin Brown appeared as representative for Plaintiff. Plaintiff did not deny writing the ARP but through his representative argued that the statement was taken out of context and he had no intention of threatening Sires. *Id*. Plaintiff was found guilty and given 225 segregation days, due to his poor adjustment record. No good conduct credits were revoked. Plaintiff's appeal of the decision was denied by the Warden. *Id*.

On March 2, 2010, while packing Plaintiff's property in preparation for his transfer to Housing Unit 1, Officer Raley found three small plastic bags of pills hidden inside Plaintiff's laundry bag. *Id*., Ex. 4. The pills were identified by medical personnel as "watch take meds" prescribed to Plaintiff. Raley wrote an NOI against Plaintiff, charging him with violating Rules 111-114, pertaining to the improper use or possession of medication, drugs, or paraphernalia. *Id*.

A hearing was held on March 4, 2010. *Id*., Ex. 5. Plaintiff was represented at the hearing by inmate Kevin Brown. *Id.,* Ex. 5. Through Brown, Plaintiff offered that he was permitted to have the medication at his prior institution and was not hoarding it. The evidence demonstrated the medication had been removed from its blister pack and transferred to a small baggie. Plaintiff was found guilty of removing the medication from the packaging and possessing a quantity greater than allowed at NBCI. He was sentenced to 100 days segregation consecutive and 60 days segregation concurrent to his previous sentence. *Id*., Ex. 5. Plaintiff's appeal of the decision was denied by the Warden. *Id*.

As a result of the rule infractions, Plaintiff was transferred to Housing Unit 1 and assigned to cell 1-B-24, Administrative Segregation Pending Adjustment. *Id*., ECF No. 6. His property was inventoried. He was permitted to keep property in compliance with DCD-110-6, which outlines allowable property for disciplinary segregation inmates. The mattress assigned to him in general population, per procedure, was transferred with him. Harbaugh avers that cells are cleaned by sanitation workers when they are vacated and a new inmate is assigned to the cell. Harbaugh further avers that Plaintiff was not placed in a cell smeared with feces and urine. He states that Plaintiff was provided all hygiene items and property in compliance with DOC policy. *Id*. Plaintiff was housed in this cell from March 2, 2010 until May 19, 2010. *Id*., Ex. 7.

Plaintiff grieved a complaint that he had been denied cleaning supplies on April 24, 2010, May 1, 2010, and May 8, and a hearing was held before Administrative Law Judge (ALJ) Osborn. *Id*., Ex. 10. The ALJ found that sinks and commodes are routinely cleaned at NBCI on Saturdays by a cleaning crew using disinfectant while inmates are out of their cells. On May 1 and 8, 2010, events resulted in the cancellation of cleaning of floors, sinks and commodes by the cleaning crew. The ALJ found that Plaintiff requested disinfectant cleaners so that he could clean the floor, sink and commode in his cell on April 24, 2010, May 1 and 8, 2010. The requests were denied. Due to safety concerns, NBCI inmates are not permitted to possess the disinfectants used by the Saturday cleaning crews. *Id*. There are no restrictions on an inmate using their own cleaning supplies to maintain the cleanliness of their cell. The ALJ found that Plaintiff used his own bar soap, shampoo and laundry detergent to clean his cell the weeks following April 24, 2010, May 2, 2010 and May 8, 2010. *Id*. The ALJ found that Plaintiff's cell did not have an unhealthy environment due to the lack of disinfectant during the time at issue and Plaintiff did not suffer any adverse side effects because detergents and disinfectants were not used by a cleaning crew during that time. *Id*. The ALJ ruled against Plaintiff as to all claims presented in the grievance. *Id*.

As a result of Plaintiff's move to segregation, McKenzie was assigned to monitor Plaintiff as he sorted through his excess property.[1] *Id*., Ex. 8. In conjunction with the move, on March 2, 2010, Plaintiff was placed in the B tier recreation cage to sort through his paperwork and to reduce his total amount of documents to 1.5 cubic feet, the amount of paperwork segregation inmates are permitted to possess per DOC policy. *Id*. McKenzie avers that with the assistance of case management all "active" legal documents were separated from Plaintiff's other papers and returned with him to his assigned cell. The remaining materials, consisting of magazines, papers, and posters were discarded

---

[1] McKenzie avers that he did not inventory, search or seize Plaintiff's property on April 14, 2010. *Id*., Ex. 8.

because Plaintiff did not provide an address to which the excess property could be mailed out of the facility. *Id*.

Pursuant to NBCI policy, inmates sentenced to more than 180 days of segregation must send all non-allowable property out of the institution. *Id*., Ex. 9. The policy was enacted as a deterrent to unacceptable behavior and due to the limited storage space available at NBCI. Plaintiff was advised of the policy. *Id*. An inmate is provided 30 days from the date of inventory to provide a mailing address where his excess property should be sent and is advised that if no address is provided the materials will be destroyed. On three occasions, Plaintiff refused to sign the notices of property disposition and failed to provide an address where his excess property could be sent. *Id*.

Plaintiff grieved his complaint regarding loss of legal materials and another hearing before ALJ Osborn was held. Plaintiff complained that on April 14, 2010, five large envelopes of legal materials were missing from the NBCI property room. *Id*., Ex. 11. Plaintiff alleged that the missing documents were copies of pleading he had filed in this Court, the Circuit Court for Anne Arundel County and the Maryland Court of Special Appeals as well as personal writings. *Id*. The ALJ found that on March 2, 2010, Plaintiff's personal property was inventoried when he was transferred to Housing Unit 1. The ALJ further found Plaintiff was properly advised that his excess property would be destroyed and he declined to provide an address for sending out the property. *Id*. The ALJ found Plaintiff failed to meet his burden of proof and dismissed the grievance. *Id*.

**Standard of Review**

A.  Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not

require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.  Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide

by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Analysis

A.    Supervisory Liability

Plaintiff's complaint against Warden Shearin and J. Michael Stouffer is based solely upon the doctrine of *respondeat superior,* which does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v.*

*Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), *citing Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Plaintiff has pointed to no action or inaction on the part of Warden Shearing or J. Michael Stouffer that resulted in a constitutional injury. Accordingly, his claims against them shall be dismissed.

B.   Due Process

Plaintiff's claims that Wilt and Raley wrote false disciplinary reports against him and that ALJ Maddox deprived him of due process during the disciplinary hearings fail. In prison disciplinary proceedings which bring the possible loss of good conduct credits, a prisoner is entitled to certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Wolff*, 418 U. S. at 564-571. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985). Plaintiff received all the process he was due. He was given timely advance written notice of the infractions and was permitted to attend the disciplinary hearing and have the

inmate representative of his choice. He also received written findings of the hearing officer. No good conduct credits were revoked as a result of the disciplinary infractions. Moreover, the hearing officer's determination of guilt was based upon some evidence, i.e. review of Plaintiff's testimony, and the written record, upon which the hearing officer based determinations as to credibility and demeanor.

C.     Conditions

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) *citing Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U. S. at 298. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. North Carolina Dept. of Corrections,* 612 F.3d 720, 723 (4th Cir. 2010), *quoting Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of

9

clearly-established pre-existing law. *See Maciariello v. Sumner*, 973 F. 2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir.2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions. *See Odom v. South Carolina Dept. of Corrections*, 349 F. 3d 765, 770 (4th Cir. 2003).

In the instant case there is no evidence that Plaintiff's cell was dirty or that he was denied cleaning supplies. No bright line was crossed by Defendants in placing Plaintiff in a cell which was not cleaned by institutional staff for three weeks. Even assuming the cell was filthy when Plaintiff was placed in the cell, the record evidence demonstrates that Plaintiff had access to cleaning materials which he used to clean the cell and by his own statements the cell remained in such a condition for approximately three days. The conditions as described by Plaintiff were not so severe that Defendants could be charged with "fair warning that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F. 3d 2929, 313 (4th Cir. 2006). The discomforts experienced by Plaintiff were restrictive and harsh, but did not impose cruel and unusual punishment on Plaintiff. This conclusion is supported by the absence of proof of significant, serious physical or psychological injury resulting from Plaintiff's temporary stay in an unclean cell.

Taking Plaintiff's allegation as true, the Court is mindful of the hardship presented by Plaintiff's lack of access to shoes other than shower shoes for approximately three months. Plaintiff

10

has failed however, to satisfy both prongs of an Eighth Amendment Claim. Principally, Plaintiff did have access to his shower shoes during the time at issue and therefore was not without access to any footwear. Further, while Plaintiff attempted to have new shoes issued to him through informal channels, once he instituted a formal complaint, shoes were promptly provided to him. ECF No. 24. Additionally, documentation provided by Plaintiff regarding his efforts to obtain replacement shoes demonstrates a clear misunderstanding on the part of correctional employees who reviewed Plaintiff's property inventory and were under the apparent mistaken impression that he had access to shoes in his allowable property. In light of the foregoing, the Court cannot find that the named Defendants acted with a sufficiently culpable state of mind. Further, other than bald allegations of injury arising from the lack of anything but shower shoes for three months, Plaintiff has failed to demonstrate that he in fact suffered any injury.[2]

D.      Property

Plaintiff's claim that his legal materials were destroyed is also unavailing. In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U. S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy.[3] *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[4] Records reflect that Plaintiff's property was inventoried and he

---

[2] Plaintiff alleges that he suffered a blood clot as a result of wearing nothing but shower shoes for three months. ECF No. 24. There is no evidence to support such a causal relationship.

[3] Plaintiff may avail himself of remedies under the Maryland's Tort Claims Act and through the Inmate Grievance Office.

[4] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing plaintiff's due process claim.

11

failed, despite repeated opportunities to do so, to designate where his excess property should be sent. As noted, above, even if Plaintiff's property were improperly destroyed, such a claim does not rise to a constitutional violation.

To the extent, Plaintiff's allegation is construed as denial of access to the courts, the claim similarly fails. Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), quoting *Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Although, Plaintiff alleges legal materials were missing he has failed to demonstrate an actual injury from the loss of those materials.

E.  Retaliation

In order to sustain a claim based on retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself

violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

In order to state a retaliation claim based on the First Amendment, Plaintiff must allege that his speech was protected by the First Amendment; that a retaliatory action on the part of the Defendants adversely affected his constitutionally protected speech; and that there was a causal relationship between his speech and the Defendants' retaliatory action. *See Campbell v. Cushwa*, 758 A.2d 616, 625, citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000). Plaintiff has failed to allege, much less demonstrate, such action on the part of Defendants. Rather, Plaintiff was charged with a rule infraction for threatening language contained in an ARP he wrote. Plaintiff's First Amendment rights do not guarantee him the right to threaten correctional officers. A mere conclusory averment, as provided by Plaintiff in the instant case, is insufficient to withstand a dispositive motion. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F. 2d 1083, 1085 (4th Cir. 1979).

Plaintiff offers nothing in support of his claims of retaliation other than self-serving conclusory averments. There is nothing in the record to suggest that Defendants acted in the manner alleged. Moreover, the ALJ sustained the rule infractions filed against Plaintiff, and the record evidence demonstrates that his transfer and reduction of property occurred in compliance with DOC policy and procedures and were not undertaken to retaliate against Plaintiff. As Plaintiff is well aware, "[i]n the prison context, we treat [claims of retaliation] with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to

prisoner misconduct." *Cochran v. Morris*, 73 F.3de 1310, 1317 (4th Cir. 1996).

## Conclusion

The dispositive motion filed on behalf Warden Bobby P. Shearin; Commissioner J. Michael Stouffer, Lt. Bradley Wilt, CO II Christopher McKenzie and CO II Roman Raley will be granted. Plaintiff's complaint against Hearing Officer Maddox will be dismissed. A separate Order follow.

March 10, 2014

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE